IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Teresa Gassaway,<br><br>                Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>                Defendant.<br>_____ | Civil Action No. 8:07-4083-HFF-BHH<br><br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Teresa Gassaway, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 32 years old at the time of the Administrative Law Judge's (ALJ) final decision. (R. at 91). The plaintiff has a twelfth grade education plus some college, and has past relevant work experience as a warehouse order puller/processor, a machine operator, a warehouse order packer/processor, a cashier, and a customer service manager. (R. at 126, 147, 152.) She claims she became disabled in September 2002 due to fibromyalgia, chronic fatigue, headaches, and panic attacks. (R. at 80, 91-93, 146, 391-394, 442-443, 450.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff protectively filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) on January 8, 2003. (R. at 80, 91-93, 394-394.) The State agency and the Social Security Administration denied her applications initially and on reconsideration. (R. at 59-61, 101-103, 106-111, 395-403, 405). A de novo hearing was held before the ALJ on April 8, 2005, at which plaintiff and her counsel appeared. (R. at 416-443). In a decision dated December 23, 2005, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. at 45-56.)

The Appeals Council granted plaintiff's request for review of the ALJ's decision, and remanded the case to an ALJ for further administrative proceedings on July 22, 2006. (R. at 63-66.) A supplemental hearing was held on November 17, 2006, at which plaintiff, her legal counsel and a vocational expert appeared. (R. at 444-478.) The ALJ issued a decision on February 2, 2007, that plaintiff was not disabled within the meaning of the Act. (R. at 15-33.) The Appeals Council denied plaintiff's request for a review on October 20, 2007 (R. at 6-8.), thereby making the decision of the ALJ the final decision of the Commissioner for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> (2)   The claimant has not engage in substantial gainful activity since September 1, 2002, the amended onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> (3)   The claimant has the following severe combination of impairments: possible early fibromyalgia and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404. Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to sit for 6 hours in a workday, stand/walk for a total of up to 2 hours in a workday, lift and carry 10 pounds frequently and 20 pounds occasionally, and push/pull no more than 10 pounds frequently and 20 pounds occasionally. Climbing, balancing, kneeling, crouching and crawling are limited to an occasional basis. My residual functional capacity is based on what I accept from Exhibit 22F.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on April 25, 1974 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) The claimant has acquired work skills from past relevant work (20 CFR 404-1568 and 416.968).

(10) Considering the claimant's age, education, work experience and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 404.1568(d), 416.960(c), 416.966, and 416.968(d)).

(11) The claimant has not been under a "disability," as defined in the Social Security Act, from September 1, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

> impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to consider the combined effects of her impairments; (2) failing to properly consider the effects of her obesity; and (3) failing to comply with prior instructions of the Appeals Council. The Court will address each alleged error in turn.

**I.      Combination of Impairments**

The plaintiff first contends that the ALJ ignored or minimized several of the plaintiff's impairments, went so far as to suggest that some did not exist, and generally failed to consider them in combination. When a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). As an important "corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

**A.      Fibromyalgia**

The plaintiff first argues that the ALJ did not properly consider her fibromyalgia, insofar as he only recognized her as having "possible early fibromyalgia," while ignoring opinions offered by the plaintiff's treating physicians that she had limitations of a disabling quality resulting from such condition. The Court does not share the plaintiff's view of the ALJ's decision. While it is true that the ALJ found that her combination of severe impairments included only "possible early fibromyalgia," this conclusion was not reached, contrary to the plaintiff's representation, without consideration of other evidence favorable to the plaintiff regarding her fibromyalgic condition.

The plaintiff emphasizes the conclusions of Drs. Melvin Porter, a consultative physician, and Pranay Patel, a treating physician, in support. Dr. Porter said that the plaintiff was not capable of performing full-time work at even the sedentary exertional level, had not been able to do so since September of 2001, and her restrictions are most likely permanent due to "a combination of disabling medical problems." (R. at 327.) He opined that her pain would be distracting to adequate performance of daily activities or work, would

be greatly increased with physical activity, and her medications would cause significant side effects. (R. at 328-29.)

Dr. Patel, likewise, found that Gassaway's pain would be distracting to adequate performance of daily activities or work, would be greatly increased with physical activity, and her diagnoses were fibromylagia, depression, anxiety, sleep apnea, and hypersomnia. (R. at 323-24.)

As stated, this evidence was not ignored. The ALJ expressly and exhaustively considered the opinions of both physicians. (R. at 25-26.) The plaintiff makes no attempt to argue that the ALJ's treatment of these opinions was somehow erroneous or defective and, in fact, it was not. The ALJ was particularly unpersuaded by Dr. Patel's opinion as to the limitations caused by the plaintiff's fibromyalgia insofar as Dr. Patel concluded, in 2005, that the plaintiff's fibromyalgic symptoms had been present since 2004, and yet Dr. Patel had not seen the plaintiff in almost three years. (R. at 25.) The ALJ found it incredible that Dr. Patel would be able render a meaningful opinion in regards to a period of time for which he had no opportunity to observe her. *Id*. The ALJ further found that Dr. Patel's conclusions were inconsistent with the plaintiff's own representations regarding her limitations and that Dr. Patel had regularly rendered statements regarding the plaintiff's ability to work without providing corroborating medical explanations. *Id*.

Likewise, the ALJ identified inconsistencies in Dr. Porter's records, including the ostensibly contradictory conclusions that the plaintiff had "arthralgias in both knees" but that "her knee exams were not remarkable." ( R. at 26.) The ALJ futher found that Dr. Porter's assessment was no more than a recitation of the claimant's subjective complaints.

It was appropriate for the ALJ to discount Dr. Patel and Dr. Porter's opinions insofar as he determined that they were not well supported and were internally inconsistent, as well as inconsistent with other substantial evidence. A treating physicians opinion is not entitled to controlling weight if it is not well-supported by medically acceptable clinical and laboratory

7

diagnostic techniques and is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Critically, the plaintiff does not contend otherwise. Her argument that the ALJ did not consider the fully body of evidence regarding her fibromyalgia is simply misplaced. The ALJ expressly found her fibromyalgia severe but disagreed as to the limiting effects of that severe impairment. (R. at 20.)

### B.     Headaches, arthralgias, and anxiety

The plaintiff next summarily contends that the ALJ found that her headaches, arthralgias, and anxiety were all severe impairments in his first decision (R. at 54-55) but, without explanation, failed to do so in his second decision (R. at 20). The Court would admit that on its face the inconsistency seems problematic. Review of the two decisions, however, persuades the Court that the ALJ's decisions were in fact, if not in form, consistent in regards to his conclusions as to these impairments. As an initial matter, the ALJ considered evidence of all three impairments in his second decision. (R. at 26-29.) Regarding her anxiety the ALJ found that she has never sought mental health treatment, has been noncompliant with relevant medications, but has experienced good results when she has taken them ( R. at 29.) Concerning her headaches and athralgias the ALJ found a want of supportive medical findings as well as inconsistencies in the plaintiff's representations regarding their frequencty and effect. ( R. at 27-28.) The ALJ discounted evidence of both limitations when he diminished the weight he gave to the plaintiff's subjective complaints and to Dr. Patel and Porter's opinions, as discussed. (R. at 25-26, 28.)

In his original decision, although he concluded that the plaintiff's headaches, arthralgias, and anxiety were severe, the ALJ found essentially no limitations to her ability to perform a reduced range of light to sedentary work. (R. at 54.) The ALJ found that medications were generally effective and that her pain and subjective symptoms are of a mild to moderate severity. *Id*. These conclusions are identical to those expressed in the

second decision that "the claimant's pain is no more than a mild to moderate degree and would not preclude her from performing a wide range of sedentary to light work activity." (R. at 29.) The pronouncement that an impairment is severe is no substantial victory for the claimant; rather, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

The plaintiff has not argued that the plaintiff has limitations flowing from these impairments, which the ALJ did not consider, notwithstanding his failure to find them specifically severe. The presence of a "severe" impairment does not entitle a claimant to benefits in the absence of a showing of related functional loss. *See Gross v. Heckler*, 785 F.2d 1163 (4th Cir. 1986). To the extent the plaintiff has not suggested how the decision would have been altered, any technical error in the ALJ's failure to find impairments severe where he previously had done so, is harmless at worst. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

### C. Sleep Apnea and Fatigue

The plaintiff next complains that the ALJ's consideration of her sleep apnea and fatigue was deficient insofar as he rejected the effects of these impairments on the grounds that the plaintiff was noncompliant with prescribed treatment. The plaintiff argues that it was the defendant's burden to demonstrate noncompliance and that the ALJ did not make the necessary findings to conclude that the plaintiff was not disabled due to noncompliance. Again, the plaintiff has characterized the ALJ's decision more narrowly than the Court would. The ALJ rejected the limiting effects of the plaintiff's sleep apnea and fatigue for numerous reasons, including, a lack of objective and medical findings (R. at 28), inconsistent complaints and misleading statements by the plaintiff (R. at 29), and her unreliability, generally, *id*. Noncompliance was only one factor, among many, for the ALJ's determination that these impairments were not additionally limiting when viewed in

combination with other impairments. *Id*.  The plaintiff has made no effort to challenge these other bases nor to explain how the noncompliance rational, if eliminated, would alter the conclusions which should rightly be drawn about the plaintiff's limitations.

The ALJ fully considered these impairments and cited various rationale based on substantial evidence, for rejecting them as nonlimiting. (R. at 27-29.)  Even to the extent the ALJ made some error in his determination regarding her noncompliance, the plaintiff has not produced any evidence or argument suggestive of the fact that the error is anything but harmless because other substantial evidence was relied upon to reject the impairments as limiting. *See Mickles*, 29 F.3d at 921.

### C. Mental Impairments

The plaintiff further contends that the ALJ improperly rejected the opinion of Dr. Patel – that the plaintiff's depression, anxiety, and panic attacks played a significant role in her functional limitations – for the opinion of non-examining reviewing physicians. As discussed, however, the ALJ was utterly unpersuaded by Dr. Patel's opinion insofar as the ALJ viewed it as an attempt to "render a 'professional opinion' of the claimant's symptoms and functional limitations for a period in time in which he had no contact with the claimant and no objective clinical information to formulate his opinion." (R. at 25.)  Dr. Patel had not seen the plaintiff for 3 years at the time he rendered his opinion. *Id*.  As the Court has concluded, the ALJ recited substantial evidence for giving no weight to Dr. Patel's opinion and the plaintiff has made no effort to challenge that determination. Accordingly, the ALJ was neither required to give the opinion any particular weight nor to reach out to Dr. Patel for additional opinions, as the plaintiff suggests. *See Mastro*, 270 F.3d at 178 (treating physician rule).

Generally, the Court is convinced that the ALJ considered all of the plaintiff's impairments in combination. In fact, the ALJ did so maybe as well as the Court has observed. There is a practical difficulty that the decisionmaker faces in simply articulating the analysis. The ALJ cannot possibly reference every single impairment in every sentence

or even in every paragraph – it is an unreasonable expectation simply as a matter of grammar and syntax. But, more critically there is a need for the ALJ to actually deal with specific impairments, in isolation, and then fold that consideration into a larger narrative about the plaintiff's overall limitations tapestry and corresponding effects.

Here, the ALJ was exhaustive in his consideration of various impairments. He stated that he expressly viewed them in combination. (R. at 20.) He referred to her "constellation" of symptoms and impairments. (R. at 28.) And, he repeatedly considered various impairments taken together. (See R. at 27-29.) For one example, among many, he acknowledged, after discussing her headaches, that "[p]oor sleep [from apnea] coupled with morbid obesity and de-conditioning would understandably make one feel tired and fatigued during the day." (R. at 28.)

The plaintiff's overarching objection, that the ALJ failed in his duty to consider the combined effect of all of the plaintiff's impairments, is simply without foundation.

**II.     Obesity**

The plaintiff next contends that the ALJ failed to consider the enhancing effect of obesity on the medical conditions from which she suffers. The plaintiff argues, although summarily, that the ALJ erred in applying Social Security Ruling 02-1p in regards to her obesity.

Social Security Ruling 02-1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p. The Ruling recognizes obesity can cause limitations in all exertional and postural functions. *See id.* It recognizes that obesity makes it harder for the chest and lungs to expand. *See id.* Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body. *See id.* The Ruling recognizes obesity can increase the severity of coexisting or related impairments, including musculoskeletal disorders. *See id.* The ALJ should consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable

impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from doing his past relevant work or other work in the national economy. SSR 02-01p at *3.

The Court finds that the ALJ's consideration of the plaintiff's obesity is thoroughly consistent with SSR 02-01p. Throughout his analysis, the ALJ repeatedly revisited plaintiff's obesity and its effects. (R. at 23, 27, 28.) He recognized the impairment's effects on climbing, balancing, kneeling, crouching, and crawling activities. (R. at 27.) Most importantly, the ALJ, as described above, considered the plaintiff's obesity in conjunction with her sleep problems and pain symptoms, contrary to the plaintiff's allegation to the contrary. (R. at 28.) Moreover, the plaintiff has offered no argument as to what limitations she would experience as a result of her obesity beyond that for which the ALJ already accounted. There was certainly no legal error in the ALJ's application of SSR 02-01p.

### III.   Appeals Council Instructions

Lastly, the plaintiff contends that the ALJ did not follow the instructions of the Appeals Council. The plaintiff argues that the Appeals Council instructed the ALJ to give a more detailed assessment of the plaintiff's daily activities such that it may be determined whether the housework she can perform is consistent with the demands of competitive work. (R. at 64-65.) As an initial matter, the Court agrees with the defendant that the Appeals Council itself was satisfied with the ALJ's effort in the second decision, in denying the plaintiff's request for review of the ALJ's decision. (R. at. 6-8.) While it is true that the Appeals Council did not specifically address the issue in its decision, the Court can assume either that it had no objection to the ALJ's consideration of the plaintiff's daily activities or any objection the Council might have had was irrelevant because other substantial evidence supported the decision.

Moreover, the plaintiff has not directed the Court to any authority indicating that an ALJ's decision is objectionable simply for failure to comply with instructions of the Appeals Council. This Court is bound to review the ALJ's decision in light of federal law and the

substantial evidence standard of review. The Court is not motivated to remand the decision based on noncompliance with the Appeals Council's instructions, when the Council itself declined to do so.

In addition, the Court has reviewed the decision and finds, contrary to the plaintiff's contention, that the ALJ properly and expressly considered in his decision not only the plaintiff's daily activities, but the record as a whole, in rendering his credibility analysis and residual functional capacity determination. The ALJ expressly noted in his decision, she was able to engage in significant daily activities. (R. at 23-25, 30.) She cares for her own personal needs without difficulty or assistance (R. at 123, 134, 245, 421, 460); performs household cleaning and other chores occasionally (R. at 245, 433, 463); prepares meals occasionally (R. at 241, 245, 433, 458, 462); attends to her child, including preparing her for school, reading to her, bathing her, assisting her with homework, and picking her up from school (R. at 239, 325, 421, 435-436, 438-439, 458-460); uses her child's father's computer occasionally (R. at 437), watches televison (R. at 239, 439, 458); possesses a driver's license and drives occasionally (R. at 245, 422, 449-450); dines out occasionally (R. at 240, 433, 439); visits others regularly, including the father of her child (R. at 245); and shops occasionally (R. at 245, 436, 450). These are all permissible considerations in determining not only the credibility of subjective allegations but how pain and symptomology might actually affect one's ability to work and perform the routine of life. *Mickles*, 29 F.3d at 921 ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.") (Hall, J. concurring). Daily activities can properly suggest that an individual is not disabled. *See Gross*, 785 F.2d at 1165. The Court is unaware of any specific requirement that the ALJ be required to make findings as to the precise amount of time the plaintiff spends performing each activity.

For reasons already partially recited and unobjected to by the plaintiff, the ALJ found her less than credible and found substantial evidence to diminish the weight given to examining physicians. The ALJ's treatment of the plaintiff's daily activities was only one

bases, among many, for the ALJ's ultimate disability determination. The plaintiff's objection regarding the Appeals Council's instruction does not raise any doubt regarding this other substantial evidence, even to the extent it might have merit on its own account, although the Court rejects that it does.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.


s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

December 18, 2008
Greenville, South Carolina